EAKERS et al. v. CLOPTON.

No. 32440.   July 1, 1947.

Rehearing Denied Sept. 9, 1947.

*184 P. 2d 247.*

Bruce & Rowan and Robert Burns, all of Oklahoma City, for plaintiffs in error.

Deupree & Linn, of Oklahoma City, for defendant in error.

PER CURIAM. This is an appeal by Fred Douglass Eakers, Ethel Lee Eakers, A. D. Fields, and Mrs. A. D. Fields, from a judgment rendered by the district court of Oklahoma county in favor of Ellen Clopton sustaining the validity of a property owners' agreement restricting the north half of block 21 in Oak Park addition to Oklahoma City, against the sale to or occupancy of any of the lots by persons of Negro blood.

The contract upon which the action is brought was entered into in the year 1938. Among other things it provides that any deed, lease or conveyance in violation of the agreement would be void and could be set aside upon petition of one or more of the interested parties to the contract; that, the contract should constitute a mutual covenant running with the land. The contract also provided that it shall become effective when executed by the owners of 51 per cent of the lots in said block.

The contract on its face purports to have been signed by 58.83 per cent of the owners of the lots in the block.

The defendants, among other things, in their answer allege that the contract was not signed by the owners of 51 per cent of the lots in said block and is therefore inoperative. The contract shows that plaintiff was one of the signers thereof; that she was the owner of a one-third undivided interest in lots 10 and 11 in said block; that she acquired her interest therein as an inheritance from her deceased husband and that the lots were set aside to her as a homestead in the administration proceeding.

It is the contention of defendants that since plaintiff only owned a one-third undivided interest in the lots and that since the owner of the other two-thirds interest therein did not sign the agreement, her interest in such lots could not be taken into consideration for the purpose of determining as to whether the owners of 51 per cent of the lots had signed the agreement. In support of this contention they cite and rely upon

the cases of Veal v. Hopps, 183 Okla. 116, 80 P.2d 275; and Caudle v. Olive, 185 Okla. 596, 95 P.2d 615. These authorities do not go to the extent claimed. They simply hold that an owner of a fractional interest in a lot cannot by signing the contract bind such lot beyond the fractional interest owned by him therein. They do not hold that an owner of a fractional interest in a lot cannot bind such lot to the extent of his interest. The clear implication of these cases is to the effect that such owner may bind his property to the extent of his interest therein. Plaintiff does not contend that the entire interest in and to lots 10 and 11 was bound by the contract. Her contention is that such lots are only bound to the extent of her one-third interest and that in determining whether the owners of 51 per cent of the lots in said block had signed the instrument the one-third interest owned by her should be taken into consideration. We think this contention correct and supported at least by implication by the cases of Veal v. Hopps and Caudle v. Olive, supra.

The record discloses that R. A. and Hattie Zenor, who were then the owners of lots 6 and 7 in said block, signed the agreement and opposite their signature gave their address and location as 828 East 9th street, and inadvertently and through error described the lots owned by them as lots 7 and 8 instead of lots 6 and 7. Lot 6 is not specifically mentioned in the contract.

It is the contention of defendant that since lot 6 is not mentioned in the agreement notwithstanding the fact that it was then owned by the Zenors, it should be excluded and not considered in determining the number of lots bound thereby; and if this lot, together with lots 10 and 11, be excluded from the instrument, it would contain the signatures of less than the owners of 51 per cent of the lots in said block and would be inoperative. If these lots be stricken and not considered in determining the number of lots bound, the contention of

defendant in this respect would be correct. The owner of lot 8 did not sign the agreement and it is conceded that this lot cannot be considered in determining as to whether 51 per cent of the owners of the lots in said block had signed the same.

We have heretofore disposed of this question insofar as it relates to lots 10 and 11. As to lot 6 the evidence is undisputed that at the time the Zenors signed the agreement they were the owners of this lot; that they did not own lot 8. The evidence further shows that the description of lot 8 was inserted in the contract through mistake and inadvertence; that the Zenors in signing the instrument intended to bind lots 6 and 7 instead of lots 7 and 8, and that the other parties to the instrument also believed and understood that lot 6 instead of 8 should be covered by the restriction agreement. Plaintiff in her petition pleads the above state of facts and asks that the instrument be reformed so as to speak the truth and conform to the intention of the parties and that the description of the premises be corrected so as to describe lots 6 and 7 instead of 7 and 8. The trial court under the evidence found this issue in favor of plaintiff and entered judgment reforming the instrument accordingly.

Defendants assign this ruling as error. It is not, however, contended by them that the evidence is insufficient to warrant reformation of the instrument. It is their contention that they acquired title to their lots prior to the time the instrument was reformed; that lot 6 was not included in the restriction contract at that time; that they had no notice or knowledge that such lot was intended to be included therein; that they are innocent purchasers and the judgment reforming the instrument is therefore ineffective as against them. The evidence shows that the defendants Eakers, who are Negroes, purchased lots 4 and 5 in said block on the 31st day of August, 1944, from W. R. Linder and wife, white

persons, who obtained title through Jesse A. Bowman who was a party to and signed the restriction contract; that the defendants Fields are also Negroes and purchased lots 6 and 7 on the 9th day of October, 1944, from Ola Holloway, a white person, who acquired title from R. A. Zenor and wife, who were also parties to and signed the contract. The challenged judgment was entered on the 24th day of May, 1945, and among other things canceled and set aside defendants' deeds to lots 4 and 5, and 6 and 7 and enjoined them from further violating the terms of the contract. While the evidence shows that defendants acquired their lots prior to the time the contract was reformed, still under the record herein they cannot be said to be innocent purchasers. The evidence shows that at the time the contract was signed and placed of record and at the time defendants acquired these lots, R. A. Zenor and wife were the owners of lots 6 and 7 and that they had no interest in, did not and never had owned lot 8; that opposite their signatures they gave as their location and address 828 East 9th street. The evidence also shows that there was a house built on the premises and was located partly on lot 6 and partly on lot 7, and that the house bore the street number 828 East 9th street. Assuming that it was essential to the validity of the contract that the parties signing the instrument should describe therein the property owned by them and which they intended to include in the agreement, we think when the entire description of the premises owned by the Zenors is considered, the premises were sufficiently described to put parties dealing with the property on notice that lot 6 and not lot 8 was intended to be bound by the instrument. The contract shows upon its face that the property sought to be included in the agreement was located at 828 East 9th street. This constituted part of the description of the property. The slightest inquiry on the part of the defendants at the time they purchased their lots would have disclosed that the house bearing this street number was located on lots 6 and 7 and not on lot 8 and are therefore chargeable with the knowledge that lot 6, not lot 8, was intended to be covered by the contract and cannot be said to be innocent purchasers. Wilson v. Olsen, 167 Okla. 527, 30 P.2d 710; Creek Land & Improvement Co. v. Davis, 28 Okla. 579, 115 P. 468. The evidence shows that the north half ((N.½) of the blocks involved contain 20 lots. The contract shows that including lot 6 and plaintiff's one-third undivided interest in lots 10 and 11 it was signed by 11.766 or 58 per cent plus of the lot owners therein. The contention of the defendants that the contract is unenforceable for the reason that it does not contain the signature of the owners of 51 per cent of the lots in the restricted area cannot be sustained.

It is further contended by defendants that the contract lacks mutuality and is therefore unenforceable. It is asserted that no mutuality exists between lots 10 and 11 and the other lots included in the contract; that the owners of the two-thirds interest in such lots not being parties to the contract could have sold their interest therein free from restrictions and that none of the parties to the contract could have prevented them from so doing; that they not being parties to the contract could not have maintained an action against any of the parties thereto to prevent a violation thereof; that since this is true plaintiff, being an owner of only a one-third interest in the lots and therefore without power to bind the entire interest, could not enforce the contract against any of the other parties thereto. What we have said relative to these lots disposes of this question.

Plaintiff being the owner of one-third interest in the lots, we think it quite clear that the contract could have been enforced against her to the extent of such interest. This being true she may likewise enforce the contract as against the other parties thereto. The contention that the contract lacks mutuality cannot be sustained.

. Defendants also complain of admission in evidence of a certain judgment rendered by the district court of Oklahoma county in the case of Sage v. Hemsley. In that case there was involved a violation of the identical contract herein. It concerned, however, lots other than the lots here involved. These defendants were not made parties to that suit. It appears that the judgment was admitted on the theory that it constituted some evidence of notice to the defendants as to the lots intended to be covered by the contract. This being the purpose for which the evidence was admitted, we fail to see how defendants could in any manner have been prejudiced by the admission of this evidence. The contract was placed of record and was of record at the time defendants acquired their premises. Defendants were bound by the record and therefore charged with notice of the existence and the terms of the contract. The error, if any, in the admission of this evidence is therefore harmless.

It is finally contended that there has been such a radical change of condition as to the use and occupancy of the property covered by the contract and surrounding property as to defeat and destroy the object and purpose of the contract and which would render it enforcement inequitable. The evidence fails to show that there has been any change of condition as to the property covered by the contract except such changes as have occurred by reason of the purchase of the lots above mentioned by defendants. The only change in condition as to the property in the restricted area was such condition as was brought about by the defendants themselves. They cannot, therefore, be heard to say that the contract should not be enforced because of such change of condition. The evidence, however, shows that there has been some change of condition as to adjoining property; that property joining the restricted area to the south is now principally owned and occupied by Negroes. The mere fact that conditions as to adjoining property has changed since the execution of the contract and such property is now principally owned and occupied by Negroes is not of itself sufficient upon which to set aside the contract. Schwartz v. Hubbard, 198 Okla. 194, 177 P.2d 117, and cases therein cited.

The trial court found that there was no such change in condition as to the property located in the restricted area or adjoining property sufficient to justify the court in refusing to enforce the contract. It cannot be said that this finding is clearly against the weight of the evidence. It will not, therefore, be set aside by this court on appeal.

Judgment affirmed.

HURST, C.J., DAVISON, V.C.J., and RILEY, BAYLESS, WELCH, and GIBSON, JJ., concur.

Rehearing Denied Sept. 9, 1947.